## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN HELMER,

                Plaintiff,

     v.

U.S. DEPARTMENT OF STATE,

                Defendant.

Case No. 19-cv-1744 (JMC)

## MEMORANDUM OPINION

Plaintiff John Helmer filed this suit to compel Defendant U.S. Department of State to respond to his Freedom of Information Act ("FOIA") request. ECF 1.[1] After some negotiation between the parties, the Department produced roughly 200 pages of responsive documents. *See* ECF Nos. 15–29; ECF 37-1 ¶ 62. Helmer filed an amended complaint alleging that the Department's response to his FOIA request was untimely (Count I), and that it had failed to adequately search for responsive records (Count II). ECF 31. The Department moves to dismiss Count I for lack of subject matter jurisdiction, and for summary judgment on Count II. ECF 33. Helmer cross-moves for summary judgment on both counts. ECF 35. Because Count I is moot as to Helmer's individual FOIA request and he lacks standing to bring a claim that the Department has a "policy or practice" of delaying its FOIA responses, the Court will **GRANT** the Department's motion to dismiss Count I and **DENY** Helmer's cross-motion for summary judgment on that count. And because the Department has demonstrated that it performed adequate searches for responsive

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

records, the Court will **GRANT** the Department's motion for summary judgment on Count II and

**DENY** Helmer's cross-motion.

## I.     BACKGROUND

The following facts are not in dispute. Helmer submitted a FOIA request to the Department

of State in June 2017 seeking records pertaining to Sir Zelman Cowen, the nineteenth

Governor-General of Australia, for the period of 1972 to 1982. ECF 35-2 ¶ 1. Specifically, Helmer

requested:

> [A]ll State Department records, including cables from US Embassy
> Canberra, US Consulate Sydney, US Consulate Melbourne; records
> of the State Department Bureau of East Asian and Pacific Affairs
> (EAP) and its subdivisional offices; the Office of Policy Planning;
> and USAID. -- all records, including embassy and consulate cables,
> reports, and memoranda of conversation covering State Department
> officials' contacts and communications with Zelman Cowen and his
> office, including telephone-calls and faxes, meetings, and written
> correspondence; and all records of State Department officials
> reporting on and assessing Zelman Cowen's significance for US
> interests, as evaluated by the officials concerned. Time period for
> search and retrial: 01/01/1972 to 12/31/1982.

*Id.* ¶ 2. The Department failed to respond to his request, and Helmer filed this suit in June 2019.

ECF 1.

In September 2019, the Department released 36 documents responsive to Helmer's FOIA

request. ECF 35-2 ¶ 5. It released 34 of those documents in full and withheld two documents in

part, pursuant to FOIA Exemption 6.[2] *Id.* The agency also notified Helmer that certain records

responsive to his request may have been transferred to the National Archives and Records

Administration (NARA). *Id.* ¶ 7. After conducting further searches at Helmer's request, the

Department released an additional 47 pages of documents in February 2020, 23 pages in March

---

[2] Helmer does not challenge the agency's Exemption 6 withholdings. ECF 34 at 14.

2020, and 13 pages in February 2021. ECF 37-1 ¶¶ 58, 62; ECF 35-2 ¶ 68. In total, the Department produced roughly 200 pages of responsive documents to Helmer. *Id.* ¶ 62.

Helmer filed an amended complaint in March 2021, alleging that the agency violated the FOIA by failing to respond to his request within 20 days, as required by statute (Count I), and failing to conduct an adequate search for responsive records (Count II). ECF 31 ¶¶ 24–48. The Department filed an answer. ECF 32. The Department subsequently moved to dismiss Count I for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for summary judgment on Count II pursuant to Rule 56. ECF 33. Helmer cross-moved for summary judgment on both counts. ECF 35. The parties' motions are fully briefed and ripe for decision. *See* ECF Nos. 33–37.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

The Department moves to dismiss Count I pursuant to Rule 12(b)(1). ECF 33. When assessing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "[i]t is to be presumed that a cause lies outside [the federal courts'] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B. Rule 56**

The parties cross-move for summary judgment pursuant to Rule 56. ECF 33; ECF 35. "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court will grant a motion for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party and the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). A court may rely on the agency's "relatively detailed and non-conclusory" affidavits or declarations to resolve a FOIA case, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

4

## III.     ANALYSIS

The Court first considers whether the Department complied with the FOIA by conducting adequate searches for responsive records, and concludes that it did. The Department is therefore entitled to summary judgment on Count II. The Court then turns to Helmer's claim that the Department violated the FOIA by failing to timely respond to his request. Because the claim is moot as to Helmer's individual FOIA request and he lacks standing to bring a "policy or practice" claim, the Court will dismiss Count I for lack of subject matter jurisdiction.

### A.  The Agency Conducted Adequate Searches

Under the FOIA, agencies have "an obligation . . . to conduct an adequate search for responsive records." *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). A search is adequate if it is "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). To prove its search was adequate, the agency may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc.*, 926 F.2d at 1200. The adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

The Department submitted detailed declarations by Eric Stein, Director of the Department's Office of Information Programs and Services, describing how the agency conducted its searches. ECF 33-3; ECF 36-1. First, the Department reasonably determined that documents

responsive to Helmer's request were likely to be housed in three locations: the Department's retired records, including its Retired Records Inventory Management System (RIMS) and the retired files of the Office of Australia, New Zealand, and Pacific Island Affairs (EAP/ANP) in the Bureau of East Asian and Pacific Affairs (EAP); the State Archiving System (SAS); and the Department's eRecords Archive. ECF 33-3 ¶ 26. Next, as detailed below, the Department searched each of those locations.

RIMS contains manifests of retired record lot files, which "serve as an index of contents of retired paper and electronic files and are used to direct a researcher to particular retired files." *Id.* ¶ 27. The Department searched the RIMS database for records that contained the keywords ("governor-general" AND "Australia"), ("Governor" AND "Australia"), ("Cowen" AND "Zelman"), and ("Cowen" OR "Zelman"), dated January 1, 1972 to December 31, 1982. *Id.* ¶ 28. Those searches returned one hit on a retired file manifest, and the agency reviewed the entire contents of the box associated with that manifest for responsive records. *Id.*

The Department also conducted two manual searches of EAP/ANP's retired lot files for records dated between January 1, 1977 and December 31, 1982, and identified five lot files potentially responsive to Helmer's request. *Id.* ¶ 29. The Department determined that most of the documents in Lot 1984D0348 were non-records that had been destroyed, and that any potentially responsive records the agency had retained from that lot would have been captured by the Department's SAS and eRecords searches (discussed below). *Id.* The agency conducted a manual review of Lot 1980F0169 and determined that it contained no responsive records. *Id.* The remaining three lots—1982F0128, 1982F0129, and 1981F0108—had been transferred to NARA and were no longer in the Department's custody. *Id.*

SAS houses documents dating back to January 1, 1973. *Id.* ¶ 30. The agency conducted two searches of the database. First, it searched for records dated January 1, 1977 to December 31, 1982 that contained the keywords ("Zelman Cowen"), ("Zelman" AND "Cowen"), ("governor-general" AND "Australia"), or ("general" AND "Australia"). *Id.* ¶ 31. Second, it searched for records dated between January 1, 1973 and January 1, 1977 that contained the keywords ("Zelman" AND "Cowen"), ("governor-general" AND "Australia"), ("Zelman" AND ("Cowen" OR "governor-general")), or ("Australia" AND "Governor General" AND "Zelman"). *Id.*

As of late 2020, "all of the documents previously stored within SAS have been migrated to and are now searchable through the Department's eRecords Archive." *Id.* ¶ 30. The Department therefore searched the eRecords Archive for records containing the keywords ("Zelman" OR "Cowen"), dated January 1, 1972 to December 31, 1982. *Id.* ¶¶ 32–33.

In light of the agency's detailed declarations, the Court concludes the Department's searches were "reasonably calculated to uncover all relevant documents," and therefore complied with the FOIA. *Valencia-Lucena*, 180 F.3d at 325. Helmer's counterarguments, as the Court explains below, do not compel a different conclusion.

First, Helmer argues that the search terms ("governor-general" AND "Australia") and ("Cowen" AND "Zelman") were inadequate, because they did not capture "inadvertent misspellings of the full name of Sir Zelman Cowen or omission of the hyphen in 'governor-general.'" ECF 35-1 at 11. But after Helmer flagged this problem to the agency in December 2020, *see* ECF 35-2 ¶ 14, the Department rectified it by conducting additional searches. The Department ran searches for ("Governor" AND "Australia") and ("general" AND "Australia")—which would capture records that omitted the hyphen in "governor-general"—and

ran searches for ("Cowen" OR "Zelman") to capture records that misspelled either Cowen's first name or last name. ECF 33-3 ¶¶ 28, 31, 33; *see* ECF 36 at 19–20. However, Helmer contends that the Department did not actually perform these supplemental searches. ECF 34 at 12–13. Helmer requested the agency perform additional searches using revised key terms in December 2020, *see* ECF 35-2 ¶ 67, but the responsive documents produced by the agency after that supplemental search are date-stamped March 11 and March 18, 2020—before Helmer requested the new search. ECF 34 at 12; ECF 35-3 ¶ 30. Therefore, according to Helmer, the Department's claim that it conducted new searches—specifically, searches for ("Zelman" OR "Cowen")—is not credible. *See id.* The Department submitted a second declaration by Stein, explaining that the date-stamped headers to which Helmer refers do not reflect the date the agency performed the search. ECF 36-1 ¶ 26. Rather, the date-stamped headers reflect the date that the records were moved from one database system to another "as part of the Department's broader migration to the e-Records Archive." *Id.*; *see id.* ¶¶ 22–25 (describing database migration process). The Court affords the agency's representations the presumption of good faith.

Next, Helmer contends that the Department's search was inadequate because it did not retrieve and produce responsive documents archived at NARA. ECF 34 at 13–14. When a document is "removed from the possession of the agency prior to the filing of the FOIA request," the FOIA does not require the agency to produce it. *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). After all, the agency "has neither the custody or control necessary" to either produce or withhold such a document. *Id.* at 150–51. That is the case here. Lot 1981F0108 was accessioned to NARA in April 1982, and Lots 1982F0128 and 1982F0129 were accessioned to NARA in February 1983. ECF 33-3 ¶ 51. An "accession" formally transfers both physical custody over and legal title to the records from the Department to NARA. *Id.* ¶ 48.

And unlike in *Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007), which Helmer relies on, *see* ECF 34 at 13, the agency has not "retained copies of the records transferred to NARA" and is therefore unable to produce them. 508 F.3d at 1119; *see* ECF 33-3 ¶¶ 51, 53. Helmer requests, in the alternative, that the Court order the Department to produce metadata of the files sent to NARA. ECF 34 at 14. But the second Stein Declaration explains that the Department did review the relevant metadata, and either determined it to be unresponsive or produced it to Helmer. ECF 37-2 ¶ 33. Again, nothing in the record undermines the presumption of good faith these agency representations are afforded.

Finally, Helmer argues that it is "highly unlikely," if not "impossible," that the Department has no remaining records regarding Zelman Cowen, given that Cowen was the Australian head of state for four and a half years and important U.S.-Australian events occurred during that period. ECF 34 at 10–11 & n.5. But an agency's detailed declarations, like those the Department has submitted here, are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc.*, 926 F.2d at 1200; *see Oglesby*, 920 F.2d at 67 n.13 (appellants' "own conviction that the Fort Hunt meeting was of such importance that records must have been created is pure speculation. Such hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search."). Helmer points to an August 1982 cable from the U.S. Secretary of State to the U.S. Embassy in Canberra, stating, "WE ARE DRAFTING LETTER TO SIR ZELMAN COWEN, BUT WE DO NOT HAVE HIS CURRENT MAILING ADDRESS." ECF 34 at 12. According to Helmer, "there must have been a letter sent to Sir Cowen subsequently, [but] the letter was nowhere in the produced documents. This leads Plaintiff to believe that the Department did not perform the search diligently." *Id.* But even assuming that such a letter was

ever sent and therefore retained by the agency, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde*, 315 F.3d at 315.

Because the Department's searches were "reasonably calculated to uncover all relevant documents," *Valencia-Lucena*, 180 F.3d at 325, the Court will grant the Department's motion for summary judgment (and deny Helmer's cross-motion for summary judgment) as to Count II.

## B. The Court Lacks Subject Matter Jurisdiction Over Count I

In Count I of his amended complaint, Helmer alleges that the Department violated the FOIA by failing to respond to his request within 20 business days, as required by statute. ECF 31 ¶¶ 24–40; *see* 5 U.S.C. § 552(a)(6)(A). He alleges elsewhere in his amended complaint that "[f]rom review of this Court's docket and litigations filed against DOS, it appears that Defendant has a well-known established practice of . . . delaying FOIA responses for exorbitantly long periods with the intention and effect of deterring FOIA requests," and that "in numerous instances DOS had no intention of complying with its FOIA obligations unless compelled to do so by a federal court (i.e., unless a requester files a lawsuit)." ECF 31 ¶¶ 14–15. Because the Court lacks subject matter jurisdiction over these claims, it will grant the Department's motion to dismiss Count I pursuant to Rule 12(b)(1). ECF 33.

 "FOIA lawsuits generally become moot once an agency has made available requested non-exempt records." *Jud. Watch, Inc. v. DHS*, 895 F.3d 770, 777 (D.C. Cir. 2018); *see Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution."). The Court has already determined that the Department conducted an adequate

search and produced responsive documents. Helmer's claim that the agency violated the FOIA by failing to timely respond to his individual FOIA request is therefore moot.

To the extent that Helmer claims that the Department has a "policy or practice" of unjustified delay, such a claim would not be moot. *See Jud. Watch, Inc.*, 895 F.3d at 777. However, the Court lacks jurisdiction to hear such a policy or practice claim because Helmer does not have standing. Article III standing has three requirements: The plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). When a plaintiff seeks declaratory and injunctive relief, "past injuries alone are insufficient . . . . Rather, [the plaintiff] must show he is suffering an ongoing injury or faces an immediate threat of injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). But Helmer's complaint includes no allegations about whether he has additional FOIA requests pending with the Department or has concrete plans to file such requests in the future. *See generally* ECF 31. Absent such factual allegations, the Court cannot say that Helmer is "realistically threatened by a repetition of his [past] experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see Tipograph v. DOJ*, 146 F. Supp. 3d 169, 175 (D.D.C. 2015) (concluding requester's allegation that she "intend[ed] to file additional FOIA requests in the future" was too speculative to establish standing for FOIA policy or practice claim); *Citizens for Resp. & Ethics in Wash. v. DHS*, 527 F. Supp. 2d 101, 106 (D.D.C. 2007) ("That CREW may one day file another FOIA request with the DHS does not represent a cognizable, palpable injury which presents a case or controversy for the Court to consider."); *cf. Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 134 (D.D.C. 2018) (concluding that FOIA requester with "pending requests for emails that ha[ve] not been denied yet but would be denied based on this policy" had standing to bring policy

or practice claim).[3] The Court will therefore grant the Department's motion to dismiss Count I, and deny Helmer's cross-motion for summary judgment on Count I as moot.

*    *    *

For the foregoing reasons, Defendant's motion to dismiss Count I for lack of subject matter jurisdiction and for summary judgment on Count II, ECF 33, is **GRANTED**. Plaintiff's cross-motion for summary judgment, ECF 35, is **DENIED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

/s/ Jia M. Cobb_____
JIA M. COBB
United States District Judge

Date: January 17, 2025

---

[3] Helmer states for the first time in his opposition brief that he "is a political writer and may just as well require documents from Department in the future." ECF 34 at 7. But a plaintiff cannot amend his complaint through an opposition brief, *see Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014), and such vague allegations concerning what Helmer might do at some unspecified point in the future are nonetheless insufficient to establish a "cognizable, palpable" future injury, *Citizens for Resp. & Ethics in Wash.*, 527 F. Supp. 2d at 106.